| | |
|---|---|
| **FRIEDMAN KAPLAN SEILER & ADELMAN LLP** | **KUTAK ROCK LLP** |
| Eric Seiler (admitted *pro hac vice*) | Peter J. Barrett (VSB No. 46179) |
| Andrew W. Goldwater (admitted *pro hac vice*) | Timothy S. Baird (VSB No. 36315) |
| Emily L. Chang (admitted *pro hac vice*) | 1111 East Main Street, Suite 800 |
| 7 Times Square | Richmond, Virginia 23219-3500 |
| New York, New York 10036-6516 | (804) 644-1700 |
| (212) 833-1100 | peter.barrett@kutakrock.com |
| eseiler@fklaw.com | tim.baird@kutakrock.com |
| agoldwater@fklaw.com | |
| echang@fklaw.com | |

*Counsel for Sony Electronics Inc.*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| IN RE: CIRCUIT CITY STORES, INC., *et al.*, | Case No. 08-35653-KRH |
| | Chapter 11 |
| Debtors. | (Jointly Administered) |
| | |
| ALFRED H. SIEGEL, AS TRUSTEE OF THE CIRCUIT CITY STORES, INC., LIQUIDATING TRUST, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 10-03600-KRH |
| SONY ELECTRONICS INC., *et al.*, | |
| Defendants. | |

### DECLARATION OF TIMOTHY GRIEBERT
### IN OPPOSITION TO PLAINTIFF'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT

TIMOTHY GRIEBERT, pursuant to 28 U.S.C. § 1746, declares:

1. I am currently a Senior Manager in the Credit and Financial Services Department at Sony Electronics Inc. ("Sony"). I have occupied this position since July 2009. Between December 2005 and July 2009, I was a National Manager of Accounts Receivable and Collateral Control in Sony's Credit and Financial Services Department.

2965344.3

2. Since November 10, 2008 (the "Petition Date"), when Circuit City filed its petition for bankruptcy, I have been involved in researching and reviewing facts and documents relevant to Sony's bankruptcy claims against Circuit City, and the Circuit City Liquidating Trust's claims against Sony.

3. Sony and Circuit City entered into a Consumer Audio/Video Group Dealer Agreement (the "Dealer Agreement") dated as of January 1, 2003. A true and correct copy of the Dealer Agreement (the "Dealer Agreement") is attached hereto as Exhibit 1.

4. Sony and Circuit City twice executed written Riders to modify the terms of the Dealer Agreement.

5. A true and correct copy of the first Rider to the Dealer Agreement between Sony and Circuit City is attached hereto as Exhibit 2.

6. A true and correct copy of Rider No. 2 to the Dealer Agreement between Sony and Circuit City is attached hereto as Exhibit 3.

7. Sony did not receive payment from Circuit City for any Sony products after Circuit City announced its liquidation. A true and correct copy of business records reflecting each payment from Circuit City for Sony product after the Petition Date is attached hereto as Exhibit 4.

8. On December 19, 2008, Sony filed a Proof of Claim pursuant to section 503(b)(9) of the Bankruptcy Code for goods valued at $42.511 million shipped by Sony to Circuit in the twenty days prior to November 10, 2008. A true and correct copy of Sony's Proof of Claim pursuant to section 503(b)(9) of the Bankruptcy Code is attached hereto as Exhibit 5.

9. On January 21, 2009, Sony filed a general unsecured Proof of Claim for $57.755 million in Circuit City's bankruptcy case. Pursuant to the Order Sustaining Debtors'

Forty-Sixth Omnibus Objection to Claims entered by the Court on November 19, 2011 [Case No. 08-35653, Doc. No. 5832], the amount of Sony's general unsecured Proof of Claim was reduced to $16,059,231.15.  A true and correct copy of Sony's general unsecured Proof of Claim is attached hereto as Exhibit 6.

10. During the course of Sony's relationship with Circuit City, Sony offered promotional programs.  Subject to the terms and conditions of the Dealer Agreement, Circuit City had the opportunity to obtain credits for meeting specifically enumerated requirements in the timeframe set forth in the program.

11. According to Exhibit B of the Second Amended Complaint, plaintiff is claiming approximately $71.639 million in chargebacks and billbacks.

12. I have reviewed and am familiar with the documentation that Sony received from Circuit City concerning such chargebacks and billbacks during the months immediately preceding and following the Petition Date.

13. I have also reviewed and am familiar with documents – such as program documents and offers – that Sony sent to Circuit City in connection with programs underlying Circuit City's chargeback and billback claims.

14. One type of document that Circuit City routinely submitted to Sony with respect to chargeback claims was a claim letter that summarized the credits that Circuit City claimed to have earned.  After Circuit City announced its liquidation, Circuit City frequently requested in its claim letters that Sony remit "payment" to Circuit City "via check" or "wire" for such credits.  Sony did not make any such cash payments to Circuit.

15. I understand from counsel for Sony that the parties have agreed that plaintiff's claim for approximately $71.639 million in chargebacks and billbacks includes

3

2965344.3

$7,878,981.35 of credits that were already applied for the benefit of Circuit City. Accordingly, $64.9 million of claims remain in dispute between the parties. In total, 284 chargebacks and billbacks (or portions thereof) alleged in the Second Amended Complaint remain in dispute.

16. Attached hereto as Schedule A is a summary of the chargebacks and billbacks in an amount greater than or equal to $100,000.00 that remain in dispute. Columns 1 and 2 in Schedule A set forth each relevant chargeback number and the corresponding amount that plaintiff claims. These are derived directly from Exhibit B to the Second Amended Complaint. Blank entries in Column 1 reference billback entries included on Exhibit B to the Second Amended Complaint.

17. Column 3 in Schedule A sets forth, where available, the program effective dates that applied to each chargeback. These dates are derived directly from documentation concerning each chargeback at issue, which I have reviewed during the course of my work on behalf of Sony in connection with this action.

18. Column 4 in Schedule A sets forth, where available, the "Vendor Payment Due Days" referenced in Circuit City's submission of documentation to Sony concerning each chargeback.

19. Column 6 of Schedule A denotes whether each chargeback accrued pre-petition or post-petition, and Column 5 provides my basis for such conclusions. Specifically, Column 5 sets forth the date on which Circuit City submitted a claim letter for each chargeback listed. Where no claim letter is available, the date on which the chargeback submission was finalized in Circuit City's Vendor Management System is listed.

20. I understand from the deposition testimony and declaration of Brandi Fose, Accounts Receivable and IT Manager for the Circuit City Stores, Inc. Liquidating Trust,

that before Circuit City could submit any claim for a chargeback to Sony, the claim had to be approved through the Vendor Management Administration system, so Circuit City could not have submitted its claim for a particular chargeback any earlier than the "finalized date" listed in the Vendor Package that Circuit City claims supports each chargeback asserted. Consequently, if (a) any claim letter or (b) any "finalized" date post--dates the November 10, 2008 petition date, I classify that chargeback as post-petition.

21. I understand from Ms. Fose's deposition testimony that Circuit City determined the pre-petition or post-petition status of each chargeback based on the date on which Circuit City allegedly completed requirements under each particular chargeback program, rather than the date on which Circuit City submitted to Sony its chargeback claim. For purposes of comparison, I have included Circuit City's pre-petition and post-petition designations under Column 7 in Schedule A.

22. Ninety-nine of the 100 chargebacks and billbacks that remain in dispute reflect "receivables" in excess of or equal to $100,000 ("High Value Post-Petition Chargebacks") that accrued after the Petition Date.

23. The High Value Post-Petition Chargebacks comprise approximately $58.606 million of the $63.76 million in chargeback and billback claims that remain in dispute.

24. Nineteen High Value Post-Petition Chargebacks, adding up to about $22.2 million, arise from 13 buy down programs. Through buy down programs, Sony offered "trailing credits" to Circuit City for selling certain Sony Products at specified discounts within the program time period. The end dates of the relevant offers within those 13 buy-down programs ranged from December 1, 2008 to January 31, 2009. Circuit City sent claims to Sony for those

5

chargebacks between January 23, 2009 and April 13, 2009.  In each such submission, Circuit stated that "payment" was due in "0" days.

25. Seventeen High Value Post-Petition Chargebacks, totaling about $9.58 million, arise from 14 bundle programs.  Bundle programs incentivized the sale in one "bundle" of certain complementary Sony Products.  The end dates of the relevant offers within those 14 bundle programs ranged between August 30, 2008 and January 17, 2009.  Circuit City sent claims to Sony for those chargebacks between January 23, 2009 and March 5, 2009.

26. Twelve High Value Post-Petition Chargebacks, representing approximately $4.894 million, arise from 11 price protection programs.  A price protection program incentivized Circuit to pass on to consumers the benefit of a price decrease by Sony.  The end dates of the relevant offers within those 11 price protection programs ranged from November 16, 2008 to January 18, 2009.  Circuit City sent claims to Sony for those chargebacks between November 18, 2008 and March 11, 2009.

27. Nine High Value Post-Petition Chargebacks, representing approximately $4.131 million, arise from 5 product-based advertising programs.  The end dates of the relevant offers within those 5 product-based advertising programs ranged from November 29, 2008 to December 27, 2008.  Circuit City sent claims to Sony for those chargebacks between December 2, 2008 and January 26, 2009.  In each submission, Circuit City stated that "payment" was due in "0" days from submission of its claim.  In all instances, the payment "due" date was well in advance of May 9, 2009.

28. Nine High Value Post-Petition Chargebacks, representing approximately $3.477 million, arise from 5 instant rebate programs.  Under instant rebate programs, the customer paid the full product price before receiving a rebate from Circuit, and Circuit received

trailing credit for each unit sold with a rebate during the promotion period. The end dates of the relevant offers within those 5 instant rebate programs ranged from December 24, 2007 to March 8, 2009. Circuit sent to Sony claims for those chargebacks between January 26, 2009 and March 16, 2009. In each submission, Circuit stated that "payment" was due in "0" days.

29. Two High Value Post-Petition Chargebacks, representing approximately $3.032 million, arise from 2 display allowance programs. A display allowance incentivized Circuit to display specific models of Sony products during the promotion period. The end dates of the relevant offers within those 2 display allowance programs were December 28, 2008 and March 31, 2009. Circuit sent to Sony claims for those chargebacks on December 15, 2008 and March 31, 2009. In each submission, Circuit stated that "payment" was due in "0" days.

30. Seven High Value Post-Petition Chargebacks, representing $2.436 million, arise from 4 general marketing programs. The end dates of the relevant offers within those 4 marketing programs ranged from September 14, 2008 to March 31, 2009. Circuit sent to Sony claims for those chargebacks between January 26 and February 10, 2009. In each submission, Circuit stated that "payment" was due in "0" days.

31. One High Value Post-Petition Chargeback, representing $1.84 million, arises from a program for certain promotional activities on the day after Thanksgiving 2008. Circuit sent a claim to Sony for this chargeback on March 26, 2009, stating that "payment" was due in "0" days.

32. Three High Value Post-Petition Chargebacks, representing about $1.362 million, arise under a single net sales program. As one aspect of Sony's annual television program, Sony established a sales target for Circuit of $500 million, and committed to provide credits of 2% of net television sales, subject to certain limitations, between April 1, 2008 and

7

March 31, 2009. Circuit sent to Sony a separate chargeback claim under this program for each of November 2008, December 2008 and January 2009. Circuit submitted such claims between February 11 and February 19, 2009. In each submission, Circuit stated that "payment" was due in "0" days.

33. Three High Value Post-Petition Chargebacks, representing about $1.2 million, arise from 3 cost-based advertising programs. The end dates of the relevant offers within those 3 programs were December 31, 2008 and February 28, 2009. Circuit sent to Sony claims for these chargebacks between January 26, 2009 and January 28, 2009. In each submission, Circuit noted that "payment" was due in "0" or "30" days. In all such instances, the payment due date was well in advance of May 9, 2009.

34. Two High Value Post-Petition chargebacks, representing about $1.032 million, arise from a single customer financing program. Circuit City sent to Sony a claims for those chargebacks between January 26, 2009 and February 12, 2009, and noted in its submission that "payment" was due in "0" days.

35. Two High Value Post-Petition Chargebacks, representing approximately $781,500, arise under a Sony program based on a percentage of net sales of VAIO computer products in December 2008 and January 2009. Circuit sent to Sony claims for those chargebacks on March 19, 2009.

36. Four High Value Post-Petition Chargebacks, representing about $758,000, arise from 4 sell-through programs intended to promote sales of certain products. The end dates of the relevant offers within those 4 programs were December 27, 2008 and January 31, 2009. Circuit sent to Sony claims for such chargebacks between January 26 and February 18, 2009. In each submission, Circuit stated that "payment" was due in "0" days.

37. Two High Value Post-Petition Chargebacks for $650,000 arise from 2 volume incentive rebate programs. Circuit sent claims to Sony for those chargebacks on January 26, 2009, and stated in each submission that "payment" was due in "0" days.

38. Two High Value Post-Petition Chargebacks, representing about $472,500, arise from 2 programs in which Sony offered trailing credit for certain Products shipped to Circuit City's 717 cross-dock facilities. Circuit City sent to Sony claims for those chargebacks between February 6, 2009 and April 13, 2009, and in each submission, stated that "payment" was due in "0" days.

39. Two High Value Post-Petition Chargebacks, representing about $334,000, arise from 2 volume incentive rebate programs based on net purchases of certain Products during Circuit City's 2009 Fiscal Year (April 1, 2008 to March 31, 2009). Circuit City sent to Sony claims for those chargebacks on January 29 and March 9, 2009, noting in each submission that "payment" was due in "0" days.

40. One High Value Post-Petition Chargeback representing $200,000 arises from a Sony program based on promotion of a VAIO laptop computer in connection with the November 14, 2008 release of the James Bond movie "Quantum of Solace." Circuit City sent a claim to Sony for that chargeback on November 25, 2008 and stated in its submission that "payment" was due in "30" days.

41. One High Value Post-Petition Chargeback representing $120,000.00 arises from a program offering incentives for incremental purchases. Circuit City sent to Sony its claim for that chargeback on January 27, 2009, and stated in its submission that "payment" was due in "30" days.

2965344.3

42.     One High Value Post-Petition Chargeback representing $100,000 arises from a type of Sony display program between January and April 2009. Circuit City sent a claim to Sony for this chargeback on January 28, 2009 and stated in its submission that "payment" was due "immediately" and in "0" days.

43.     Attached as Exhibit 7 hereto is a copy of each claim letter and document on which Circuit City specified the number of days in which "payment" was due. Documents in Exhibit 7 are organized in descending order of dollar value of the chargeback or billback at issue.

44.     Of the 284 chargebacks and billbacks that remain in dispute, 184 are for amounts of less than $100,000. Of these 184 chargebacks, 180 are for chargebacks that accrued after the Petition Date (the "Low Value Post-Petition Chargebacks"). The Low Value Post-Petition Chargebacks add up to $5,097,087.86.

45.     Attached hereto as Schedule B is a summary of chargebacks and billbacks in an amount less than $100,000.00 that remain in dispute. Columns 1 and 2 in Schedule B set forth each chargeback number and the corresponding amount that plaintiff claims. These are derived directly from Exhibit B to the Second Amended Complaint. Blank entries in Column 1 reference billback entries included on Exhibit B to the Second Amended Complaint.

46.     Column 3 in Schedule B sets forth, where available, the "Vendor Payment Due Days" referenced in Circuit City's submission of documentation to Sony concerning each chargeback.

47.     Column 5 of Schedule B denotes whether each chargeback accrued pre-petition or post-petition, and Column 4 provides my basis for such conclusions. Specifically, Column 4 sets forth the date on which Circuit City submitted a claim letter for each chargeback listed. Where no claim letter is available, the date on which the chargeback submission was

finalized in Circuit City's Vendor Management System is listed. For purposes of comparison, I have included Circuit City's pre-petition and post-petition designations under Column 6 in Schedule B.

        I declare under penalty of perjury that the foregoing is true and correct.

Executed in Park Ridge, New Jersey
on this 25th day of July, 2014

                                              TIMOTHY GRIEBERT

2965344.3