IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRIGNIA
RICHMOND DIVISION

IN RE:          CIRCUIT CITY STORES, INC.,                    Case No. 08-35653-KRH
                        Debtor.                               Chapter 11

_____

ALFRED H. SIEGEL,

                Plaintiff,

v.                                                            APN 10-03600-KRH

SONY ELECTRONICS, INC., a/k/a Sony,
*et al*,

                Defendants.

_____


**<u>MEMORANDUM OPINION</u>**


   Before the Court in this Adversary Proceeding are cross-motions for summary judgment

filed by Plaintiff, Alfred H. Siegel, the Trustee of the Circuit City Stores, Inc. Liquidating Trust

(the "Trustee") and by Defendant Sony Electronics, Inc. ("Sony").  A hearing was conducted on

August 21, 2014 (the "Hearing"), to consider the parties' arguments.  The parties presented four

primary issues upon which the Court was asked to rule.  Those were:  (i) whether the Trustee is

barred from recovering approximately $58.6 million in chargebacks and billbacks that Circuit

City earned under the Dealer Agreement governing the parties' transactions on account of the

applicable eighteen-month statute of limitations; (ii) whether the Trustee is barred from

recovering an $8 million preferential transfer claim on account of the applicable two-year statute

of limitations; (iii) whether Sony can use the value of goods it delivered to Circuit City during

the twenty days immediately preceding the commencement of its bankruptcy case both to

recover full payment under 11 U.S.C. § 503(b)(9) and to assert a new value defense under 11 U.S.C. § 547(c)(4); and (iv) whether the Trustee may invoke the doctrine of equitable recoupment to circumvent Sony's affirmative statute of limitations defense in order to apply the credits Circuit City earned under the Dealer Agreement as a defense against Sony's claims.

At the conclusion of the hearing the Court ruled that it could not grant Sony summary judgment on the Trustee's claim to recover credits earned under the Dealer Agreement because the statute of limitations defense presents mixed questions of fact and law. Those issues must be reserved for trial. The Court ruled that the statute of limitations does not bar the Trustee's $8 million preference claim because the amendment that added the claim relates back to the filing of the original complaint. The Court ruled that, based on its prior decision in *Circuit City Stores, Inc. v. Mitsubishi Digital Electronics America, Inc. (In re Circuit City Stores, Inc.)*, No. 10-03068-KRH, 2010 WL 4956022 (Bankr. E.D. Va., Dec. 1, 2010), Sony cannot use the delivery of the same goods both to recover a 11 U.S.C. § 503(b)(9) claim and to assert a new value defense under 11 U.S.C. § 547(c)(4). Lastly, the Court granted the Trustee's motion for summary judgment, permitting the Trustee to use Circuit City's earned credits as a defensive offset against Sony's pending claims against the estate. This memorandum opinion sets forth the Court's analysis and conclusions that support its prior rulings.

## Jurisdiction and Venue

The Court has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b). Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Factual and Procedural Background

This Adversary Proceeding was filed in connection with and developed out of the bankruptcy case commenced by Circuit City under Chapter 11 of the Bankruptcy Code[1] on November 10, 2008 (the "Petition Date").  Circuit City was a national, specialty retailer of consumer electronics.  As of the Petition Date, Circuit City employed approximately 39,600 employees and was operating approximately 712 retail stores and 9 outlet stores throughout the United States and Puerto Rico.

Circuit City continued to operate its retail business in the ordinary course as debtors-in-possession following the Petition Date.  On January 16, 2009, the Court authorized the Debtors to conduct going out of business sales at all of the Debtors' retail locations.  The going out of business sales were completed by March 8, 2009.  On September 29, 2009, the Debtors and the Creditors' Committee filed their First Amended Joint Plan of Liquidation.  The disclosure statement was approved by order entered September 24, 2009.  A Second Amended Joint Plan of Liquidation was filed on August 9, 2010, and an order confirming the Debtors' Modified Amended Second Joint Plan of Liquidation was entered on September 14, 2010 (the "Plan"). The confirmed Plan substantively consolidated the Debtors' bankruptcy estates and established a liquidating trust to collect, administer, distribute, and liquidate all of the Debtors' assets under Chapter 11 of the Bankruptcy Code.[2]  The Plan became effective on November 1, 2010. Plaintiff, Alfred H. Siegel was appointed as Trustee for the liquidating trust.

---

[1]  11 U.S.C. §§ 1101–1174.  All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq*.

[2]  Article V.F.2. of the Plan describes the assets transferred by the Debtors to the Trust.  These assets included the Causes of Action defined in Article I.B.1.21 of the Plan, including any and all claims, actions, proceedings, causes of action, Avoidance Actions, and suits that any Debtor and/or any Estate held against any Entity.

On January 1, 2003, Circuit City and Sony entered into a Consumer Audio/Video Group Dealer Agreement (the "Dealer Agreement") under which Sony sold goods to Circuit City. Over the course of the parties' relationship, Circuit City and Sony completed many transactions pursuant to this Dealer Agreement, including a number of transactions that were completed after the Petition Date. In its Second Amended Complaint, the Trustee claims that Sony is indebted to Circuit City in the amount of approximately $72.8 million for unpaid chargebacks, billbacks, warranty claims, and other unpaid credits to which Circuit City became entitled both pre- and post-petition. Approximately $63.8 million of this $72.8 million arises from disputed chargeback and billback claims made by the Trustee. Additionally, approximately $58.6 million of the $63.8 million in disputed chargebacks and billbacks are based on claims to which Circuit City became entitled after the Petition Date while it was operating its business as debtor-in-possession.

Sony afforded a variety of different types of vendor funding to Circuit City through its participation in various programs under the parties' Dealer Agreement. The programs allowed Circuit City to earn credits that the company could apply toward Sony's outstanding invoices at the time that the credit reached maturity. Some of the various chargeback and billback programs in which Circuit City participated and accumulated credits included: a buy down program whereby Circuit City could earn credits for selling specific Sony products at a discount during an identified time period; a bundling program whereunder Circuit City could acquire credits for selling certain Sony products together; and a price protection program whereby Circuit City could obtain credits for selling specified Sony products at a discount. Other offered incentives featured advertising, rebate, and marketing programs. There were nearly twenty different

programs identified by the parties under which Circuit City accumulated high-value post-petition chargeback and billback claims.[3]

The Trustee initiated this Adversary Proceeding on November 9, 2010 (the "Adversary Proceeding"). Nearly four years later, on July 9, 2014, the Trustee filed his motion for partial summary judgment, asking the Court to determine the amount and validity of the chargebacks, billbacks, and other credits to which Circuit City is entitled. Sony filed its own motion for partial summary judgment on July 25, 2014. Sony asked the Court to rule that the Trustee's claims arising out of the $58.6 million in post-petition chargebacks and billbacks were barred by the eighteen-month statute of limitations for which the Dealer Agreement provided. Sony requested the Court to dismiss the Trustee's preference claim in the amount of approximately $8 million on the grounds that it was barred by the two-year statute of limitations for which § 546 of the Bankruptcy Code provides. Sony asked the Court to rule as a matter of law that it was entitled to assert a claim for goods delivered to Circuit City during the twenty-day period prior to the Petition Date both for recovery under § 503(b)(9) of the Bankruptcy Code and as new value under § 547(c)(4) of the Bankruptcy Code. The Trustee filed a cross-motion for summary judgment on August 8, 2014, under which the Court was asked to rule that the Trust could use the equitable doctrine of recoupment as a defensive offset against Sony's claims against the estate in the amount of $58.6 million.

### Summary Judgment Standard

Part VII of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") applies to adversary proceedings. Bankruptcy Rule 7056 makes Federal Rule of Civil Procedure 56 (the "Civil Rules") applicable to adversary proceedings. *See* Fed. R. Bankr. P. 7056. Under Civil

---

[3] "High value post-petition chargebacks" are defined by Sony as the 100 "receivables" in excess of or equal to $100,000 for which Circuit City submitted claims to Sony after the Petition Date. These high value post-petition chargebacks make up the $58.6 million that the parties continue to dispute.

Rule 56(a), the court may only grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard is well established, and summary judgment "is favored as a mechanism to secure the 'just, speedy and inexpensive determination' of a case." *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1322–23 (4th Cir. 1995) (quoting Fed. R. Civ. Pro. 1).

The party moving for summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 447 U.S. 317, 322 (1986). The court will consider all evidence in the light most favorable to the party opposing the motion for summary judgment. *See, e.g., U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Furthermore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," while factual disputes over irrelevant or unnecessary facts are not considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In this case, the Court finds that the Defendant has not met its burden of proof by demonstrating that there is no genuine dispute as to any material fact regarding its statute of limitations claim as it relates to Circuit City's $58.6 million in claims arising out of post-petition chargebacks and billbacks. Next, the Court finds that there are no genuine disputes as to any material facts regarding Sony's statute of limitations claim as it relates to the $8 million preference or Sony's § 547(c)(4) new value claim. Finally, the Court also finds that the Plaintiff has met this initial burden with respect to his equitable recoupment claim. Thus, these three issues are ripe for summary adjudication.

## Analysis

### I

Sony requests partial summary judgment on the basis that the Trustee's chargeback and billback claims that were earned in the post-petition period—approximately $58.6 million of the contested claims—are time-barred by the applicable eighteen-month statute of limitations. The Dealer Agreement governs all sales of products from Sony to Circuit City. Article Third of the Dealer Agreement provides that Sony "shall, during the term hereof, sell Products to Dealer [Circuit City] upon the terms and conditions hereinbelow set forth . . . ." (Decl. of Timothy Griebert in Opp'n to Pl.'s Mot. for Partial Sum. J. Ex. 1). The original Dealer Agreement entered into by the parties provided for a one-year statute of limitations period. An amendment entered into by the parties later changed this provision. It now provides that "[a]ll causes of action by the Dealer against the Company [Sony] must be instituted against the Company within 18 months from the date of the event which gave rise to the cause of action."

The Dealer Agreement includes a New Jersey choice of law provision. The products sold by Sony to Circuit City constitute goods within the definition of Article 2 of the Uniform Commercial Code (the "UCC"). Thus, Article 2 of the UCC as adopted by New Jersey applies to the sales that occurred under the Dealer Agreement. The UCC as adopted by New Jersey contains a four-year statute of limitations for the breach of a contract for the sale of goods. N.J.S.A. § 12A:2-725(1). The UCC further provides that the parties to an agreement "may reduce the period of limitation to not less than one year." *Id.* The parties' bargained for eighteen-month limitations period applies to the Trustee's Complaint against Sony for breach of its obligations with regard to the chargeback and billback claims to which Circuit City became entitled under the Dealer Agreement.

Sony contends that this limitations period bars the Trustee's chargeback and billback claims that accrued following the Petition Date.  Section 108(a) of the Bankruptcy Code extends the applicable statute of limitations period for claims that arose prior to the date of the petition for relief.  11 U.S.C. § 108(a) ("If . . . an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of . . . (2) two years after the order for relief.").  This provision is inapplicable to claims that accrued following the petition date. *See, e.g., Hanna Coal Co. v. I.R.S.*, Civ. A. No. 92-0071-B, 1994 WL 666928, at *2 (W.D. Va. Oct. 12, 1994) ("[C]ourts have uniformly held that § 108(a) tolls only those claims which have arisen prior to the filing of the petition, and not those which accrued after the filing of the petition."); *In re Northern Specialty Sales*, 57 B.R. 557, 559 (Bankr. D. Ore. 1986) ("[T]he court concludes that § 108(a) does not extend the time within which a trustee or debtor in possession may commence suit on a postpetition claim.").  Therefore, the Trustee cannot invoke § 108(a) to extend the statute of limitations period applicable to those claims Circuit City obtained post-petition.

As this Adversary Proceeding was filed on November 9, 2010, Sony argues that Circuit City's post-petition claims would only be timely if they accrued on or after May 9, 2009—eighteen months prior to the filing of the Adversary Proceeding.  Sony contends that none of the Trustee's claims accrued after the May 9, 2009 date; and, accordingly, they are all barred by the statute of limitations.  Sony maintains that under New Jersey law, a cause of action accrues and the statute of limitations begins to run "when . . . the party seeking to bring the action [first had] an enforceable right."  *Metromedia Co. v. Hartz Mountain Assocs.*, 139 N.J. 532, 535 (1995)

(quoting *Andreaggi v. Relis*, 171 N.J. Super. 203, 235–36 (Ch. Div. 1979)) (internal quotation marks omitted).

Sony requests the Court find that the limitations period began to run as soon as Circuit City had an enforceable right. Sony suggests that Circuit City obtained this enforceable right immediately upon satisfying the program requirements under the Dealer Agreement. According to Sony, the only additional action that Circuit City was required to take to obtain a chargeback or billback was to submit a written request to Sony. Sony received all of the post-Petition Date claims prior to May 9, 2010.[4] The Trustee, on the other hand, contends that the limitations period did not begin to run until Sony breached its contract. That did not occur until Sony dishonored Circuit City's claim. The Trustee submits that the critical event occurred, at the earliest, on April 20, 2010, when Sony first indicated that it did not intend to honor the credits already earned by Circuit City. The Trustee argues that it is not until "a party is apprised of a breach, that the statute of limitations begins to run." *Apex Digital Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 966 (7th Cir. 2013). The Trustee views Sony's repudiation of the credits in April 2010 as the operative triggering event because prior to that date Circuit City had at most a potential or contingent claim for breach of contract that would only arise in the future if and to the extent that it presented the credits for use and Sony refused to accept the credits.

The United States District Court for the Eastern District of Virginia has stated that "[t]he issue of whether a cause of action is barred by the statute of limitations usually presents a mixed question of law and fact for the Court." *Vaughan v. First Liberty Ins. Corp.*, No. 3:09cv3642009, 2009 WL 4030729, at *3 (E.D. Va. Nov. 19, 2009) (alteration in original) (quoting *Church v. Wachovia Sec., Inc.*, No. 3:05CV422, 2008 WL 5429604, at *10 (W.D.N.C.

---

[4] Sony also draws upon the fact that all of Circuit City's written claims requested that Sony make payment either in "zero" days or within "30" days. All of these payment request dates also fall prior to May 9, 2010.

Dec. 30, 2008)) (internal quotation marks omitted).  "When there is a dispute over the facts related to the limitations period, the issue must ultimately be resolved by the trier of fact." *Rux v. Republic of Sudan*, No. Civ.A. 2:04CV428, 2005 WL 2086202, at *23 (E.D. Va. Aug. 26, 2005) (citing *Brown v. Am. Broadcasting Co., Inc.*, 704 F.2d 1296, 1304 (4th Cir. 1983)).

The competing contentions of the parties place the issue of when did the Trustee's cause of action accrue in dispute.[5]  Based on the competing facts alleged by the parties' briefs and the arguments presented to the Court at the Hearing, the Court finds that Sony has not met the applicable Civil Rule 56(a) standard by demonstrating that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  There is a genuine dispute as to the material fact regarding when the limitations period began to run.  Sony asserts Circuit City's claims accrued as soon as Circuit City completed the program requirements, while Circuit City asserts that its claims did not accrue until the contract between the parties was beached when Sony first indicated its intention to dishonor the credits.  As a result of this genuine dispute as to a material fact, the Court will need to hear evidence on this issue.  Therefore, this factual determination is reserved for trial, and the Court denies Sony's motion for summary judgment in this regard.

## II

Sony next requests partial summary judgment on the grounds that the Trustee's claim to recover an $8 million preferential transfer should be dismissed because it is time-barred by the applicable two-year statute of limitations.  This preference claim is based on Circuit City's check

---

[5]   The Trustee argues in the alternative that if the cause of action accrued as soon as the credits first became available for use, the limitations period would be subject to equitable tolling until at least April 20, 2010.  Moreover, the Trustee also raises arguments related to the applicability of the statute of limitations based on the plan deadline for objections to claims; material facts that remain in dispute regarding whether $4.17 million of claims should be considered pre- or post-petition; and whether the statute of limitations in the Dealer Agreement applies to the Trustee's claims regarding unjust enrichment, account stated, turnover, and declaratory judgment.  As material facts are in dispute regarding the applicability of the statute of limitation contained in the Dealer Agreement, the Court does not reach these issues on summary judgment.

numbered 1037456.  The payment evidenced by this check was made by Circuit City to Sony on

November 3, 2008, seven days before the Petition Date.

The factual background underlying the Trustee's assertion of this preference claim is

instructive.   The Trustee's original Complaint commencing this Adversary Proceeding was

timely filed on November 9, 2010.  Paragraph 29 of the original Complaint alleged that Circuit

City made transfers to Sony during the ninety-day preference period immediately preceding the

Petition Date "in an amount not less than $192,482,117.46."  The original Complaint attached an

exhibit that purported to identify "each and every transfer during the Preference Period."  Circuit

City's check numbered 1037456 was not included among the many payments included on the

attachment.  The Trustee's Second Amended Complaint, filed on February 5, 2014, added the $8

million transfer to the universe of claims the Trustee intended to challenge as preferential

transfers.

Back when the original Complaint was filed, the Court entered an Order adopting

Avoidance Action Adversary Proceedings Amended Procedures (the "Procedures Order")

whereunder the parties were required to conduct mandatory mediation.  The Court set September

28, 2011, as the deadline for completing the Court ordered mediation (the "Mediation

Deadline").  The Court thereafter extended the Mediation Deadline on multiple occasions at the

request of the parties.  The Court subsequently entered an Order Establishing Mediation Protocol

on September 19, 2012, which provided the parties, again at their request, with a judicial

mediator.   The Court extended the judicial mediation period by subsequent orders through

November 2013.  As a result of the prolonged mediation proceedings, the parties were able to

narrow some of the issues.  The Trustee amended his complaint to reduce the amount of the

transfers he now intends to challenge as preferential to "an amount not less than

$124,410,811.00." This amendment, which resulted from the parties' mediation, eliminated roughly $68 million from the Trustee's avoidance action. In reducing the amount of his claim, the Trustee did identify the one $8 million transfer, which he added to the list now attached to the Second Amended Complaint.[6]

Sony essentially argues that, because the Trustee did not include this $8 million transfer in the list attached to his original Complaint, Sony did not learn about the possible inclusion of this transfer until January 9, 2014, when the Trustee filed his motion seeking leave to file the Second Amended Complaint. Accordingly, Sony argues that the payment is barred by the two-year statute of limitations contained in 11 U.S.C. § 546(a).

Bankruptcy Code § 546(a) provides in relevant part that:

(a) An action or proceeding under section . . . 547 . . . of this title may not be commenced after the earlier of—
(1) the later of—
    (A) 2 years after the entry of the order for relief; or
    (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). Sony argues that under § 546(a)(1)(A) of the Bankruptcy Code, the Trustee was required to bring all preference actions by November 10, 2010, which is two years after the Petition Date. While the Trustee filed his original Complaint within this period, the Second Amended Complaint was filed well past this date. Thus, the issue becomes whether the Trustee's amendment relates back to the original Complaint.

---

[6] It is also worth noting that this newly identified $8 million transfer represents less than five percent of the entire $192 million in potentially fraudulent transfers identified by the Trustee in his original Complaint.

Civil Rule 15(c)[7] allows for relation back when an amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  Sony contends that the new $8 million preference claim "relies upon 'a separate set of operative facts' from those in the original Complaint."  *In re Khafaga*, 431 B.R. 329, 334 (Bankr. E.D.N.Y. 2010).  The $8 million claim should not be found to relate back, according to Sony, because the original Complaint failed to provide Sony with any notice that the Trustee would bring any such additional preference claim in the future.  The Defendant then proceeds to cite a number of preference cases denying relation back on the grounds that each transfer in an avoidance action constitutes a separate transaction "in the absence of an underlying unifying scheme or course of conduct."  *In re Austin Driveway Servs., Inc.*, 179 B.R. 390, 399 (Bankr. D. Conn. 1995); *see also In re MBC Greenhouse, Co.*, 307 B.R. 787, 793 (Bankr. D. Del. 2004) (finding that an additional thirty-nine preference claims did not relate back because they were not made pursuant to a course of dealing and did not arise out of the same common scheme as the transfers alleged in the original complaint); *In re Slaughter Co. & Assocs., Inc.*, 242 B.R. 97, 102 (Bankr. N.D. Ga. 1999) ("If the original complaint indicates an intention to pursue all transfers, the addition of transfers will relate back, but where the additional transactions are truly separate and do not arise from a common core of operative facts, the amendment should not be allowed.").

The Court does not find Sony's argument persuasive.  While it is true that courts will not allow relation back where newly asserted preferential transfers do not arise out of the same conduct, transaction, occurrence, or course of conduct as the claims asserted in the original pleading, that is simply not the circumstance presented here.  The $8 million transfer was made pursuant to the Dealer Agreement, as were all of the other transfers challenged by the Trustee in

---

[7] Bankruptcy Rule 7015 makes Civil Rule 15 applicable in adversary proceedings.  *See* Fed. R. Bankr. P. 7015.

his original Complaint.  The $8 million transfer is only one of eighty-nine transfers challenged by the Trustee as preferential.  The amount of the transfer represents a minor percentage of the total amount of transfers challenged in the original Complaint.  This transfer was a payment made on the same accounts, in the same time period, to the same payee, and was governed by the same Dealer Agreement as all of the other transfers alleged in the original Complaint.  It was part of a course of dealing between Circuit City and Sony and arose from a common core of operative facts.

The Court dismisses Sony's contention that it lacked sufficient notice that the Trustee might identify other fraudulent transfers after filing his original Complaint.  Courts will generally find that "[i]f the original complaint indicates an intention to pursue all transfers, the addition of transfers will relate back."  *In re Slaughter Co. & Assocs., Inc.*, 242 B.R. 97, 102 (Bankr. N.D. Ga. 1999); *see also Pereira v. Hong Kong & Shanghai Banking Corp. (In re MamKuo Seafood Corp.)*, 67 B.R. 304, 306 (S.D.N.Y. 1986) ("[I]f the original complaint indicates an intention to pursue all transactions, the adding of such transactions will relate back.").  Here, the Trustee's original Complaint indicated such an intention to pursue all transactions.  This is demonstrated by the fact that the original Complaint sought to avoid preferential transfers "in an amount *not less than* $192,482,117.46." (emphasis added).  This emphasized language indicates an intention to challenge all transfers that may have been made during the preference period.  The fact that the Trustee attached an exhibit to his original Complaint "identifying *each and every transfer* during the Preference Period," lends further support to finding that Sony was on notice that the Trustee intended to challenge all preferential transfers that the Trustee could identify.  (emphasis added).  The Plan did not become effective until November 1, 2010.  The newly appointed Trustee for the newly created liquidating trust had just nine days to file this Adversary

Proceeding as well as over 600 other avoidance actions. Finally, the Court-ordered judicial mediation proceedings in which the parties engaged provided an opportunity for the parties to exchange data and narrow issues. Through this process, the Trustee was able to eliminate nearly $76 million in transfers alleged in his original Complaint. The process also identified the new $8 million transfer, which the Trustee added to his list. The result was a net reduction of roughly $68 million in potential liability to Sony. The sheer reduction in the number of claims by the Trustee further supports the finding that is also evident from the language contained in the original Complaint—that the Trustee intended to challenge all identifiable preferential transfers.

The Court finds that as this $8 million transfer was governed by the same Dealer Agreement, as it arose out of the same conduct, transaction, or occurrence as those set out in the original Complaint, and as Sony had sufficient notice of the Trustee's intention to challenge all potentially preferential transfers, the amended claim relates back to the filing of the original Complaint. Sony's motion for partial summary judgment on the basis that this transfer should be dismissed because it is time-barred and does not relate back is denied. The Trustee is entitled to assert this $8 million claim.

III

Sony additionally requests the Court to rule that all of Sony's shipments to Circuit City made during the twenty-day period prior to the Petition Date may be asserted as new value for purposes of Bankruptcy Code § 547(c)(4) and also as an administrative claim under Bankruptcy Code § 503(b)(9). The Court has previously addressed and decided this issue in another Circuit City matter, albeit in a slightly different context. The Court does not find adequate justification to overrule its prior decision. Therefore, Sony's motion for partial summary judgment in this regard will also be denied.

15

Bankruptcy Code § 547(c) provides an exception to the Trustee's ability to avoid certain transfers that would otherwise be preferential.  This section reads as follows:

> (c) The trustee may not avoid under this section a transfer—
> . . . .
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
> > (A) not secured by an otherwise unavoidable security interest; and
> > (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

11 U.S.C. § 547(c)(4).  "[T]he legislative history to § 547(c)(4) suggests that the subsequent new value defense was enacted to encourage creditors to replenish the estate by continuing to sell on credit to companies experiencing financial hardship."  *Mitsubishi*, 2010 WL 4956022 at *5 (quoting Paul R. Hage & Patrick R. Mohan, *Is it Still New Value? Application of Section 503(b)(9) to the Subsequent New Value Preference Defense*, 19 J. Bankr. L. & Prac. 4, Art. 7 (2010)) (alteration in original).

Bankruptcy Code § 503(b)(9) allows for an administrative expense for the value of goods "received by the debtor within 20 days before the date of commencement of the case," provided that those goods have been "sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9).  The issue Sony wants the Court to revisit is whether a supplier can assert a new value defense under Bankruptcy Code § 547(c)(4)(B) if the supplier is also to receive an administrative expense claim under Bankruptcy Code § 503(b)(9) "predicated upon that same recitation of value."  *Mitsubishi*, 2010 WL 4956022 at *6.  As the Court stated in *Mitsubishi*, the key question is whether the debtor made an avoidable transfer to or for the benefit of such creditor on account of the new value it received from the creditor.  *Id.*

In its *Mitsubishi* decision, this Court held:

> [T]hat because the payment of a creditor's Bankruptcy Code § 503(b)(9)
> administrative claim for the value of goods transferred to a debtor in the twenty-
> day period immediately preceding the commencement of a bankruptcy case is an
> "otherwise unavoidable transfer" as that term is used in § 547(c)(4)(B) of the
> Bankruptcy Code, the recipient of such a payment is not entitled to utilize the
> value of those same goods as the basis for a new value defense under § 547(c)(4)
> of the Bankruptcy Code.

*Id.* at *1. Confronted with this precedent, Sony, nevertheless, now urges the Court to reverse its prior holding and adopt the reasoning recently articulated by the United States Court of Appeals for the Third Circuit in *Friedman's Liquidating Trust v. Roth Staffing Cos. (In re Friedman's, Inc.)*, 738 F.3d 547 (3rd Cir. 2013).  In *Friedman's*, the Third Circuit held that post-petition transfers made pursuant to a pre-petition wage order did not affect the calculation of that creditor's new value defense under Bankruptcy Code § 547(c)(4).  In essence, the Third Circuit determined that Bankruptcy Code § 547(c)(4)(B) refers only to "otherwise unavoidable *pre-petition* transfers," reading the italicized text into the Code.

While the decision in *Friedman's* is purely persuasive authority and is not binding on this Court, the Third Circuit clearly indicated that it did not intend for its decision to extend to § 503(b)(9) claims.  *Id.* at 561 n. 9 ("Here, we need not resolve the question of whether assertion of a reclamation claim should reduce a new value defense, as we are only considering the effect of payments made pursuant to a Wage Order.").

The Circuit City Liquidating Trust maintains a reserve account in which it holds sufficient funds that have been set aside to pay all unresolved administrative claims, including the full amount of Sony's § 503(b)(9) claim.[8]  As was the case in *Mitsubishi*, the Defendant will receive the full value of its § 503(b)(9) claim.  If the Court were now to decide that *Mitsubishi*

---

[8]   The Court could not have confirmed the Plan if it were otherwise.  *See* 11 U.S.C. § 1129(a)(9).

was wrongly decided and allow Sony to use its § 503(b)(9) claim as new value for purposes of § 547(c)(4), Sony would be permitted a double recovery based on the same goods that underlie its single claim.

The plain language of Bankruptcy Code § 547(c)(4)(B) does not allow for the assertion of a § 503(b)(9) claim as a new value defense after the creation of a reserve account by the debtor to pay all administrative claims.[9]  The language of § 547(c)(4)(B) does not contain any limitation as to when new value may be repaid.  Furthermore, the United States Court of Appeals for the Fourth Circuit's statement in *Chrysler Credit Corp. v. Hall (In re JKJ Chevorlet, Inc.)*, 412 F.3d 545, 553 n.6 (4th Cir. 2005), that "post-petition transfers may be considered under section 547(c)(2)(B)" remains instructive.  A contrary interpretation of the statue would result in the inequitable treatment of creditors, as the Trustee would be required to pay the administrative claim while simultaneously not being permitted to challenge potentially avoidable preferential transfers.

As satisfaction of Sony's § 503(b)(9) claim post-petition by Circuit City "is an 'otherwise unavoidable transfer' . . . § 547(c)(4)(B) of the Bankruptcy Code negates [that claim] for qualification as new value." *Mitsubishi*, 2010 WL 4956022 at *8.  For the same reasons as previously discussed in *Mitsubishi*, Sony's motion for partial summary judgment with respect to its Bankruptcy Code § 547(c)(4) new value claim is denied.

IV

Finally, the Trustee seeks a determination that he may assert any of Circuit City's earned credits that would otherwise be time-barred by the eighteen-month statute of limitations as a defensive offset against Sony's claims against the estate under the equitable doctrine of

---

[9]  Creation of the reserve account constitutes a transfer, as defined in the Bankruptcy Code, for Sony's benefit that is not subject to avoidance.

recoupment.[10]   The Court finds that the doctrine of equitable recoupment is applicable in this Adversary Proceeding.   The Trustee may assert the doctrine as a defensive shield to offset Sony's pending claims against the estate.

It is well established that the right of recoupment, while not addressed in the Bankruptcy Code, may be asserted in a bankruptcy proceeding.   *See. e.g., Lee v. Schweiker*, 739 F.2d 870 (3rd Cir. 1984) (applying the doctrine of recoupment in a bankruptcy case); *Delta Air Lines, Inc. v. Bibb (In re Delta Air Lines)*, 359 B.R. 454, 459 (Bankr. S.D.N.Y. 2006) (same).   Recoupment is an exclusively defensive remedy, which allows the defendant to reduce the amount of the claim the plaintiff asserts against it.   *See* 4 *Norton Bankr. L. & Prac.* § 73:2 (3d ed. 2010).   In this case, the Trustee attempts to reduce Sony's claims against the estate by the amount of Sony's unpaid obligations to Circuit City.

To successfully establish a claim based on recoupment, the party asserting the right must generally establish that both parties' debts arise out of a single transaction.   The Supreme Court of the United States in *Beach v. Ocwen Federal Bank*, observed that "a defendant's right to plead recoupment, a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded, survives the expiration of the period provided by a statute of limitation that

---

[10]  Sony contends that any setoff claim the Trustee may have possessed is now time-barred.  The Trustee is alleging here a right separate from that of setoff.  Setoff and recoupment are relatively similar equitable remedies.  While recoupment and setoff are similar in the sense that each has the effect of reducing the amount of a claim asserted by the plaintiff against the defendant, the premise underlying each of these rights is distinct.  A claim based on setoff generally arises from a transaction separate and distinct from the transaction that gave rise to the original cause of action. *See Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1079 (3rd Cir. 1992) ("Generally, the mutual debt and claim are the product of different transactions.").  On the other hand, a recoupment claim generally must arise out of the same contract or transaction as the original cause of action. *See Berger v. City of North Miami, Fla.*, 820 F. Supp. 989, 991–92 (E.D. Va. 1993) ("Recoupment is a common law, equitable doctrine that permits a defendant to assert a defensive claim against a plaintiff, arising from the same contract or transaction as plaintiff's claim, to reduce the amount of the damages recoverable by plaintiff.").  Because setoff claims are considered separate causes of action arising out of independent wrongs, setoff generally may not be asserted after the statute of limitations has run. *See Smith v. Am. Fin. Sys., Inc. (In re Smith)*, 737 F.2d 1549, 1552 (11th Cir. 1984) ("A setoff, unlike a recoupment, is subject to the statute of limitations.").  Recoupment, on the other hand, generally is not barred by the statute of limitations so long as the original action was timely filed. *See Bull v. United States*, 295 U.S. 247, 262 (1935) ("[A recoupment] defense is never barred by the statute of limitations so long as the main action itself is timely.").

would otherwise bar the recoupment claim as an independent cause of action."  523 U.S. 410,

415 (1998) (quoting *Rothensies v. Elec. Storage Battery Co.*, 329 U.S. 296, 299 (1946)) (internal

quotation marks and citation omitted).

New Jersey law, which governs the Dealer Agreement under which these transactions

were completed, similarly requires that a recoupment claim be based upon the same transaction

that is the subject of the other party's suit.  In *Beneficial Finance Co. v. Swaggerty*, the New

Jersey Supreme Court held that "New Jersey similarly defines recoupment as 'the reduction of a

claim because of an offsetting claim arising out of exactly the same transaction . . . .'"  432 A.2d

512, 516 (N.J. 1981) (quoting *Gibbins v. Kosuga*, 296 A.2d 557, 560–61 (N.J. Super. Ct. Law

Div. 1972)).  *Beneficial Finance* includes a discussion of the policy consideration underlying the

doctrine of recoupment, which is "to permit a transaction which is made the subject of suit by a

plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view

of the one transaction as a whole."  *Id.*  (quoting *Rothensies*, 329 U.S. at 299) (internal quotation

marks omitted).  The court in *Beneficial Finance* also observed that "the fundamental purpose of

recoupment . . . is the examination of a transaction in all its aspects to achieve a just result."  *Id.*

at 517 (citing *Rothensies*, 329 U.S. at 299).  Finally, the claimant must also establish that it is

asserting the recoupment claim as a defensive offset, rather than attempting to obtain affirmative

relief.  In *Midlantic*, the New Jersey Superior Court held that "[a]lthough the defendants may not

raise this cause of action as a sword against [the plaintiff], they may raise it as a shield by way of

counterclaim if the counterclaim sets forth a cause of action in equitable recoupment."  559 A.2d

at 874.

In order for the Court to grant summary judgment on this issue, the Trustee must

establish that:  (i) the debt and claim arose out of the same transaction; (ii) the recoupment claim

is being asserted as a "shield" as opposed to a "sword;" and (iii) equity requires that he be permitted to assert a recoupment claim.  The Court finds, based on the undisputed facts in this case, that the Trustee has satisfied all of these elements as a matter of law.

Sony disputes that the Trustee's equitable recoupment claim arises out of the same transaction as Sony's affirmative claims against the estate.  Sony advances the argument that because these claims did not arise out of "*exactly* the same transaction," the Trustee's recoupment claim must fail.  *See Beneficial Finance*, 32 A.2d at 516 (emphasis added).  To prove that these claims did not arise out of *exactly* the same transaction, Sony suggests the Dealer Agreement was neither a sales transaction whereby Sony sold goods to Circuit City, nor a Sony program whereby Circuit City could earn chargeback credits.  Instead, Sony adopts the position that the parties entered into "thousands of separate sales transactions," and that the Dealer Agreement "does not embody *any* of those thousands of distinct and separate exchanges of consideration."

Sony makes these arguments despite the fact that in its own Memorandum of Law in Support of its Motion for Partial Summary Judgment, Sony states "[t]he Dealer Agreement governs sales of products by Sony to [Circuit City]."  Article Third of the Dealer Agreement states Sony "shall, during the term hereof, sell Products to the Dealer upon the terms and conditions hereinbelow set forth at such prices and upon such other and additional terms and conditions as the Company may, from time to time, stipulate."  (Decl. of Timothy Griebert in Opp'n to Pl.'s Mot. for Partial Sum. J. Ex. 1).  Sony points to the fact Article Third (D) of the Dealer Agreement states "[e]ach shipment of Products to the Dealer shall constitute a separate sale" as evidence that these claims do not arise out of the same transaction.  This provision does not establish that all of the parties' claims arose from contractually separate, totally unrelated

transactions.  In fact, the contrary is true.  The United States District Court for the Eastern

District of Virginia has stated that recoupment "permits a defendant to assert a defensive claim

against a plaintiff, arising from the same contract or transaction as plaintiff's claim." *Berger*, 820

F. Supp. at 991–92.  The Dealer Agreement was the contract between these parties that governed

every transaction between Circuit City and Sony.  Sony's Senior Vice President of Credit and

Customer Support has stated as much, by confirming that "Dealer agreements are our contracts

with our customers.  They explain our relationship and expectations between the two parties."

(Pl.'s Reply Mem. in Supp. of its Cross-mot. for Sum. J. with Respect to Recoupment at 4)

(quoting Sanscartier Dep. at 37–38).

By now attempting to argue that the Dealer Agreement does not apply to all of the

transactions that occurred between Sony and Circuit City, the Defendant makes an argument

contrary to the one it forwarded in its own Motion for Partial Summary Judgment.  In essence,

Sony is attempting to interpose the Dealer Agreement to time-bar the Trustee's assertion of

Circuit City's credits while simultaneously asserting that these credits were produced by separate

and independent transactions that did not arise under the Dealer Agreement.  If it is true that each

of these transactions were independent, unrelated, and arose outside of the Dealer Agreement,

then the eighteen-month statute of limitations would not be applicable and the Trustee's

equitable recoupment claim would be unnecessary.

The Court finds that the Dealer Agreement was the contract that governed all of these

related purchases by Circuit City, as well as the credits Circuit City earned upon its satisfaction

of the various dealer programs.  Sony's Balkanization of the parties' contractual relationship into

thousands of separate transactions attempts to parse the parties' relationship in such a way that is

not supported by the undisputed facts that have been presented to the Court.  Thus, the Court finds that these claims arose out of the same transaction.

The Trustee must show that he is asserting the recoupment claim defensively and that equity supports the assertion of this claim.  As the Trustee is asserting recoupment purely to use Circuit City's earned credits as a defensive shield against Sony's pending proofs of claim, there is no dispute that the Trustee is invoking the doctrine of equitable recoupment defensively.  Equity also supports a finding that recoupment is available to the Trustee.  Over the course of Sony and Circuit City's relationship, Sony regularly allowed Circuit City to apply the credits it earned under the various chargeback and billback programs towards future purchases to reduce the amount of these outstanding invoices.  The parties expected that Circuit City would use these earned credits to offset Sony's invoices that were due for payment.  It would create an inequitable result if Sony were permitted to avoid all of these earned credits, which were intended, based on the parties' dealings, to offset Sony's invoices.  It would also result in a windfall for Sony to be able to collect the face amount of its invoices, while being able to escape honoring Circuit City's offsetting credits.

The Court finds that the Trustee has successfully established each element of equitable recoupment.  Based on the undisputed facts presented to the Court, the equitable doctrine of recoupment permits the Trustee to assert Circuit City's earned credits defensively to offset Sony's pending claims.  Because both parties' claims arose out of the same transaction, the Trustee is using equitable recoupment as a "shield," and recoupment is necessary to achieve fundamental fairness, the Court grants Circuit City's Cross-Motion for Summary Judgment.

**Conclusion**

Having reviewed the facts and applicable law pertaining to these cross-motions for summary judgment, the Court finds:  (i) Sony's claim that $58.6 million in chargebacks and billbacks are barred by the statute of limitations is denied because there are material facts in dispute; (ii) the Trustee's $8 million preference claim should not be dismissed because it relates back to the time of the original Complaint; (iii) based on this Court's prior decision in *Mitsubishi*, Sony cannot use its Bankruptcy Code § 503(b)(9) claim as new value for purpose of Bankruptcy Code § 547(c)(4); and (iv) the Trustee's cross-motion for summary judgment with respect to recoupment is granted as a matter of law, and therefore the Trustee may use Circuit City's earned credits to defensively offset Sony's pending claims against the estate.

A separate order shall issue.

ENTERED: _____Sep 8, 2014_____

_____/s/ Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket:  Sep 8, 2014